# 𝔖taunton

## CLINTON WEBB AND WILLIAM SAFEWRIGHT V. JAMES F. SMITH.

September 5, 1940.

Record No. 2196.

Present, All the Justices.

The opinion states the case.

*S. B. Campbell,* for the plaintiffs in error.

*S. F. Landreth, B. P. Goad* and *Price Goodson,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

James F. Smith instituted this action against Clinton Webb and William Safewright, owners of a school bus, to recover for personal injuries and property damages sustained in a collision between a school bus and a pick-up truck driven by him. The trial court entered judgment for $500 on a verdict returned by the jury for plaintiff.

The accident occurred December 6, 1937, about 8:30 a. m. on Federal highway number 52, between Fancy Gap and Hillsville in Carroll county. The Highway Department had just scraped a 3-inch fall of snow from the center of the hard surface to or near the dirt shoulders. The freezing weather and a slight drizzle of rain had formed a thin coating of ice over the double track of that part of the surface of the highway cleared of snow. The school bus, on its regular schedule, left Fancy Gap to pick up school children between there and Hillsville. James F. Smith, a deputy sheriff, left Fancy Gap a few minutes after the bus, en route to Hillsville to attend the circuit court then in session. He knew the vehicle ahead was a school bus and stayed about 600 feet behind it until just before the collision. When the school bus stopped on a grade at or near the foot of a hill for the purpose of picking up a school girl, whose father had signalled the bus to stop, Smith ran into the bus from the rear and sustained the injuries and loss of which he complains.

Assignments of error numbered 1 and 2 are, in effect, based on the exceptions taken to the refusal of the trial court to strike the evidence, and to its refusal to set aside the verdict of the jury. In other words, defendants con-

tend that the evidence of plaintiff is not sufficient to convict them of negligence, and that the ice on the highway (an act of God) was the sole proximate cause of the accident.

█ The ice on the hard surface was a condition known to the operator of each vehicle, and each was charged with the duty to take care and caution in the operation of his vehicle proportionate to the known and obvious dangerous condition of the highway.

The charge of negligence is stated in the following language: "The negligence of the defendants in the operation of their truck or bus being not giving proper warning or signal of their stopping, and stopping on the highway so as to endanger the traveling just immediately following, and placing the plaintiff in a position of danger under which the plaintiff had no control and in violation of law * * * ."

The school bus involved was a modern motor vehicle approved by the State Board of Education. It was painted a distinctive color. Printed in large type on the rear were the words: "SCHOOL BUS STOP." The construction of the bus made it impractical for the operator to give hand signals that could be seen from the rear. It was equipped with electrical signal devices of approved design, which were applied by pressure of the brake. This electrical equipment seems to have been manufactured, installed and maintained in accord with the signal devices required by Code, sec. 2154 (122).

Plaintiff testified that he did not see any signal indicating the intention of the operator to stop. This evidence is wholly negative. The uncontradicted evidence for defendants is that the stop lights were properly connected with the brake, and that they were in proper working order immediately *before,* and immediately *after* the accident. The automobile mechanic, who made weekly inspections of this bus and who repaired it after the collision, testified that the connections with the stop lights were in working order when the bus was brought into his shop and that, under the conditions stated, they were bound to have been working at the time of the collision.

When plaintiff came over the crest of the hill some 610 feet from the point of impact, he noticed that he was getting closer to the bus and began to check his speed. When he was about 75 feet from the rear of the bus he realized it was going to stop. At the same moment he saw Helen Branscome run out from behind her father's truck parked on the left shoulder. She ran diagonally across the highway in front of him and toward the front of the bus. He immediately applied his brakes which, instead of checking, increased the speed of the truck and caused it to skid into the rear of the bus with considerable force.

It is conceded that the operator of the bus did not make a sudden stop. He applied his brakes, slowed his speed and came to a gradual stop.

This phase of the evidence clearly establishes two facts: First, that the proper signal indicating the intention of the operator to stop was given; and, second, that there was no negligence in the manner in which the operator of the bus brought it to a stop.

The only other question involved is whether or not the operator, in stopping his bus, violated any of the provisions of Code, sec. 2154 (133). This section provides: "No vehicle shall be stopped in such manner as to impede or interfere with or render dangerous the use of highways by others; no truck or bus or part thereof shall be stopped on the traveled portion of any highway outside of cities and towns for the purpose of taking on or discharging passengers * * * , *unless the operator of any such vehicle cannot leave the traveled portion of the highway with safety* and * * * no vehicle shall be stopped except close to the right hand curb or edge of the highway * * * ." (Italics supplied.)

The situation revealed by the evidence is that the operators of the two vehicles, as they came over the crest of a steep grade, could see a third motor vehicle, a pick-up truck, parked to their left just off the traveled portion of the highway and more than 550 feet from the crest. As the school bus approached this parked vehicle a man, ac-

companied by a school girl, signalled the operator of the school bus to stop. In obedience to this signal and in performance of his duties to pick up school children, the driver guided the bus to the extreme right of the cleared part of the highway, and made a gradual stop with the right side of the bus within a foot of the snow banked on the edge of the hard surface by the snow plows of the Highway Department. The rear end of the bus was approximately 50 feet north of the rear end of the pick-up truck, which was headed in the opposite direction and parked off the hard surface on the opposite side of the highway.

There is some conflict in the evidence as to the exact point of impact on the highway. Plaintiff testified that this point was 50 feet up the hill from a 15-foot fill. Other witnesses stated that the point of impact was at the foot of the hill where the fill begins. It must have been very near the beginning of the fill at the foot of the hill, as plaintiff said that if he had passed the bus to the left either he would have struck the little girl, whom he claimed was running diagonally across the highway toward the front of the bus, or he would have run off the left side of the highway down the fill. If the school bus stopped 50 feet or more south of the beginning of the fill, then the right shoulder of the highway opposite the point of impact was 9 feet wide. If he stopped at the beginning of the fill, then the right shoulder opposite the point of impact was only 2 or 3 feet wide.

Plaintiff contends that it was the duty of defendants to stop the bus on the 9-foot shoulder, which he states was sufficiently hard to sustain traffic. Regardless of the exact point where the bus was brought to a stop, the following circumstances show that it could not have been driven on the right shoulder of the highway with safety. First, there was a drizzling rain causing a skim of ice; second, the shoulders were hidden under a 3-inch mantle of snow; third, snow from the center of the highway had been banked on or near the edge of the shoulders; fourth, several witnesses

testified that had the school bus been driven off the hard surface it would have become stalled on the dirt shoulder.

■■ These physical facts and circumstances bring the case within the exception stated in the statute. In other words, the statute does not require the operator of a school bus to leave the highway under any and all circumstances before stopping to take on and discharge school children. When the condition of the weather, the highway and the surrounding circumstances render it unsafe so to do, such operators are permitted by the express terms of the statute to stop on the traveled portion of the highway.

■ Plaintiff testified that, as he came over the crest of the hill, he realized that the bus was reducing its speed—he was then several hundred feet from the bus—and he began to check his speed. He stated that he closed this gap to a distance of 75 feet before he realized the bus was going to stop, and that he then applied his brakes but was unable to stop because of the icy surface of the highway. He said that he had ample time to have stopped his truck, and he would have stopped it before the impact except for the fact that the ice caused the wheels to skid. He knew the icy condition of the highway. He was charged with the duty of taking care and caution in the operation of his truck commensurate to the known and obvious danger. He knew that he was following a school bus, that it was likely to stop at almost any point along the highway to pick up school children, and that the bus had been reducing its speed for some distance before reaching the point of impact. There is nothing in the evidence which tends to indicate that he could not have seen, as the operator of the school bus saw, the father of Helen Branscome signalling the school bus to stop. The electric stop signals were burning. These he should, and doubtless would have seen, had he been keeping a proper lookout. It was his own want of care, plus the icy condition of the highway, which was a contributing, if not the sole proximate cause of the accident.

Plaintiff contends that the failure of the operator of the bus, before bringing it to a stop, to look in his rear vision mirror for traffic approaching from the rear convicts him of negligence. Even if we hold that this was negligent, it has no causal connection to the collision and the results flowing therefrom. The operator is only chargeable with what he would have seen had he looked into the mirror. Therefore he is charged with knowing, first, that plaintiff was in his rear and traveling slowly in the same direction, and, second, that he was more than 75 feet from the rear end of the bus with his truck apparently under complete control. If the operator had seen plaintiff approaching as stated, he would have had the right to assume that the slow speed of the bus and the electric stop signals were sufficient warnings of his intention to stop to have enabled plaintiff to bring his truck to a stop before he reached the rear of the bus.

The judgment of the trial court will be reversed, the verdict of the jury set aside and final judgment here entered for defendants.

*Reversed and final judgment.*