# Richmond

## PHYLLIS LELIA RUSSELL V. SURRY W. KELLY, ET AL.

December 7, 1942.

Record No. 2573.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Thomas L. Woodward*, for the plaintiff in error.

*Rixey & Rixey*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

Phyllis Lelia Russell, while a passenger in a car driven by Vernon L. Chapman, was injured when that vehicle collided with another driven by Surry W. Kelly and owned by Francis M. Ellett, III, who was riding in the rear seat. Miss Russell sued Kelly and the administratrix of Ellett, who was killed in the collision, for damages for her injuries. There was a verdict for the defendants upon which the trial court entered judgment.

The present writ of error granted to the plaintiff below brings under review certain instructions which were granted at the request of the defendants below. For convenience we shall refer to the parties as they appeared in the trial court.

The collision occurred about midnight on December 18, 1940, on a straight and level stretch of U. S. Highway No. 58, running between Portsmouth and Suffolk. At the time the highway was paved to a width of twenty-nine feet, sufficient for three lanes of travel, with wide dirt shoulders on either side. The Chapman car, in which the plaintiff was riding, was bound westwardly toward Suffolk at a speed of about forty to forty-five miles per hour. The Kelly car was proceeding eastwardly toward Portsmouth at about the same speed. Kelly and his wife were on the front seat and Ellett and a Mrs. Davis were on the rear seat. All of the occupants of the Kelly car, except the driver, Kelly, were killed in the collision.

Chapman testified that he first noticed the oncoming Kelly car when it was about 500 yards away; that as it got closer he was blinded by its headlights; and that just "instantaneously before the accident happened", the Kelly car cut to its left and across the lane of his (Chapman's) car which continued on the right-hand side of the road.

In the main, the testimony of the plaintiff corroborates that of Chapman. She testified that despite the blinding headlights of the oncoming car, she could see the edge of the pavement and observed that the car in which she was riding was in its right-hand lane; that just before the collision the oncoming Kelly car was in the "middle lane"; and that suddenly it cut across the lane of the Chapman car, causing the collision.

Kelly testified that he first saw the oncoming car when it was some distance away; that as it neared him he saw that it "was coming diagonally across the road, gradually"; that he remarked to his wife, who was sitting on the seat beside him, that if the oncoming car did not turn "we would hit head on"; that he had just completed this remark when he saw that a collision was imminent, and in the effort to avoid it he turned his car sharply to the left from the right-hand lane in which it had been traveling.

The right front of the two cars collided with such force as to demolish both vehicles and to kill three occupants of the Kelly car, besides causing serious and painful injuries to the plaintiff.

The plaintiff offered Instruction "A" which told the jury that if they believed from the evidence "that the defendant, Kelly, was at the time of the accident, or immediately prior thereto, driving in the center lane of the highway when not attempting to overtake or pass another vehicle then he was guilty of negligence". At the request of the defendants the court modified this instruction by adding this language: "unless you believe from the evidence that Kelly turned out in an emergency not created by him."

The court likewise, at the request of the defendants, instructed the jury, in effect, that if they believed from the evidence that Kelly turned his car to the left in an emergency not of his own making in the effort to avoid a head-on collision, this would not constitute negligence as a matter of law, but that it was for the jury to say whether such action in turning out was reasonable under the circumstances.

The plaintiff objected to this latter instruction and the modification of Instruction "A" on the ground that there was no evidence of such sudden emergency.

[■] In our opinion these instructions were entirely proper since they presented Kelly's theory of the case as supported by his own testimony. In substance, as we have seen, Kelly testified that while traveling in his proper lane he saw the Chapman car leave its proper lane and head directly toward his (Kelly's) car, that a head-on collision would have resulted if he (Kelly) had continued in his proper lane, and that in the effort to avoid such a collision he turned his car sharply to the left.

If the imminent peril of a head-on collision between two meeting automobiles, each traveling at forty to forty-five miles per hour, does not present a clear case of sudden emergency, it is difficult to envision one.

At the request of the defendants the court granted Instruction "7a" which read as follows:

"The court instructs the jury that if you believe from the evidence that when the Chapman car was approaching the Kelly car, the Chapman car left its right-hand lane and came diagonally toward the Kelly car, and that Miss Russell in the exercise of reasonable care under the circumstances then existing should have realized that Chapman was driving in such a manner and under such circumstances as reasonably calculated to cause an accident, if such were the facts, and so realizing could have warned Chapman in time for Chapman, in the use of ordinary care to have avoided the accident in question, and failed so to do, then you should find for the defendant."

It also modified certain instructions offered by the plaintiff by telling the jury that she was not entitled to a recovery if she "was guilty of negligence which proximately contributed to her injury."

The plaintiff insists that there was no evidence upon which such instructions could be predicated or which would warrant the jury in finding that she was guilty of contributory negligence.

The defendants argue that since Kelly testified that the Chapman car left its proper lane and came across the road "gradually", that since the plaintiff testified that she could see the right-hand edge of the pavement along which her car was traveling, and that if she had seen her car leave its proper lane she would have warned her driver, Chapman, of this, and that since no such warning was given, the jury had the right to believe Kelly's statement and find that the plaintiff was guilty of contributory negligence in failing to observe the impending peril and in failing to warn her driver of it. The implication is that she was not looking. This argument is ingenious but will not withstand analysis.

If the plaintiff's testimony is read as a whole and is true, clearly she was not guilty of contributory negligence. She not only looked but observed that her car was following the edge of the pavement and was continuing in its proper lane. In this situation there was no occasion for her to warn her driver of anything.

On the other hand, the fact that the Chapman car may have "gradually" left its proper lane and may have come toward the lane of the Kelly car, and that the plaintiff may have failed to observe this under the circumstances here, would not warrant the jury in finding that she was not looking, as she says she was, or that she was otherwise guilty of contributory negligence.

When a situation is open and obvious, one will not be heard to say that he looked but did not see. But that is not the case here. This was at night. The plaintiff says the lights of the oncoming vehicle partly blinded her. The two vehicles were approaching each other at a combined speed of approximately ninety miles per hour. Under these circumstances, without being negligent, she may have been mistaken in thinking that her car was being driven in its proper lane. And, yet, according to her uncontradicted testimony, she was looking and trying to observe where her car was, and was not simply relying upon the manner in which her companion was driving. What more could she have done? In the absence of any intimation that her car was being driven

in an improper manner, there was no duty on her to warn the driver.

Moreover, if the situation developed so quickly and unexpectedly as to have created a sudden emergency for Kelly, the same would be true as to the plaintiff who was a mere passenger in the other car.

■ Contributory negligence is, of course, an affirmative defense, and the burden of proving it is upon the defendant unless it appears from the plaintiff's own testimony or from the other circumstances of the case.

■ In our opinion there was no evidence to support the instructions on contributory negligence.

The defendants argue that, in any event, the granting of these instructions on contributory negligence was harmless error because, they say, it is manifest that the jury had accepted Kelly's account of how the collision occurred and has exonerated him of all responsibility therefor.

■ We cannot agree with this argument. The court instructed the jury that if they believed from the evidence that the collision was proximately due to the negligence of both drivers, the plaintiff was entitled to a verdict unless they further found from the evidence that she was guilty of contributory negligence. Under the evidence submitted the jury may have thought that both drivers were at fault, and yet, under the instructions given, that there was sufficient evidence to warrant their finding that the plaintiff's contributory negligence barred her recovery.

The judgment complained of is reversed and the case is remanded for a new trial in accordance with the views here indicated.

*Reversed and remanded.*