# Richmond

W. H. HAMILTON AND W. H. DARDEN, TRADING, ETC. v.
HAZEL K. GLEMMING, ADM'X.

March 1, 1948.

Record No. 3285.

Present, All the Justices.

The opinion states the case.

*Leigh D. Williams* and *Lawson L. Worrell*, for the plaintiffs in error.

*V. C. Randall*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Vernon Lee Glemming, Jr., a child three years and ten months old, was struck and killed by a motor truck owned by W. H. Darden, and operated by his agent, W. H. Hamilton.

The personal representative of the decedent has recovered a verdict and a judgment against the owner and the operator of the truck, which are before us for review.

For convenience, we shall refer to the parties as they appeared in the court below.

The sole contention of the defendants is that the court erred in giving an instruction to the jury relating to the effect of the failure of the driver of a motor vehicle to drive upon the right half of a highway.

In view of the conclusion which we have reached, it is not necessary to set out the evidence in detail. It will be sufficient to summarize only the evidence upon which that instruction is claimed to be based.

The accident occurred about noon on December 14, 1946, on McKinley avenue, a road in a suburban settlement in

Norfolk county. The deceased infant lived with his parents at their home on the south side of McKinley avenue, approximately 80 yards east of its intersection with Second street. West of the Glemming home is the dwelling of Mrs. Dorothy Pierce. They are separated only by a driveway between them. Both houses are situated approximately 25 feet from the south edge of the avenue. McKinley avenue has a hard surface 15 feet wide. On its north side is a grass shoulder 34 inches wide and next a ditch approximately 28 inches wide and 14 inches deep.

W. H. Hamilton was the driver of a milk motor truck owned by W. H. Darden. The truck was about 12 or 13 feet long, and had a closed body, equipped with four doors. It had no seat for the driver, who stood up to drive. On the day in question, Hamilton was accompanied by his six-year old son, who stood up on the right-hand side next to the windshield. Driving north on Second street, Hamilton made a right-hand turn eastwardly into McKinley avenue. When he made the turn, there were four children, all under seven years of age, standing in the front yard of the Pierce home. He did not observe these children until he was 60 feet from them, at which time he thought they were standing on the grass 3 feet away from the road. He said he was then "driving pretty well in the middle of the road" at the rate of 10 miles per hour; that when he got within 10 feet of the children, one of them ran out in front of his truck; that he turned the front of the truck sharply to the left away from the child; and that was the last thing he knew that happened. He thought the front end of the truck missed the child. He did not immediately apply his brakes and the truck continued to the left across the road, and came to a stop astride the ditch on the north side.

Vernon Lee Glemming, Jr., was found dead lying on the north side of the road, that is, to the left of the direction in which the truck was going. His head was on the grass just off the road, his body on the road, with his feet pointed towards its center. The body was 12 feet from the point where the truck first began to turn to the left. The truck

stopped 35 feet beyond the body. The child died from a fractured skull.

The distance from the corner where Hamilton turned in entering McKinley avenue to the point where the children were standing was 75 yards, and his view of them was unobstructed. There were no dents or marks of any character to indicate what portion of the truck struck the child. Hamilton did not know where it hit the child, or the point on the road where the child was hit. He could not account for the body of the child being found on his left-hand side of the road.

As to the weight and effect of the testimony, the physical facts, and the proper inferences therefrom, we express no opinion.

The court granted four instructions for the plaintiff and four for the defendant. We need consider only two of them, P-8 granted to the plaintiff and D-9 granted to the defendants.

P-8 reads as follows:

"The Court instructs the jury that the law of Virginia provides that the driver of a motor vehicle shall drive his car upon the right half of the highway or the street upon which he is driving. And if the defendant, Hamilton, in driving east on McKinley avenue, did not drive his truck to the south of the center of said street, then he was negligent in not so doing. And if the jury believe that such negligence was the proximate cause of the accident or contributed to it, then they should find a verdict for the plaintiff."

D-9 is in the following language:

"The Court instructs the jury that if a person, without negligence on his part, is suddenly confronted by an emergency, he is not required to make a wise choice, and if you believe from the evidence that Mr. Hamilton, while proceeding along McKinley Street, was suddenly confronted by an emergency to either turn to his left in order to avoid striking the child, or to stop, and that he cut to his left in an effort to avoid the accident, and, that his action in so doing was such as a person of ordinary prudence might

have done under like circumstances, then he was not guilty of negligence, even though he failed to avoid the collision, and even though you may believe from the evidence that he could have avoided the accident, had he attempted to stop, and your verdict should be for the defendants."

The defendants objected to instruction P-8 on the following three grounds:

"1. That the plaintiff's decedent was not a member of the class of persons for whose protection the statute was designed;

"2. That the violation of the statute was not a proximate cause of the accident; and

"3. That the instruction was in conflict with Instruction No. 9, granted for the defendant."

The plaintiff contends the physical facts show that the child, when struck, was to the left of the center of the road, and that he would have escaped injury if the truck had been driven on its right half of the highway. She further contends that regardless of the position of the child, the operator of the truck saw or should have seen him, either on the road, entering the road, or playing in dangerous proximity thereto, in time to have avoided the accident, if he had exercised due and ordinary care.

The defendants contend that the evidence shows that the child suddenly ran on the road in front of the truck; that its driver, confronted with an emergency, acted as a person of ordinary prudence might have done under the circumstances, and that the accident was excusable. They further contend that the driving of the truck in the middle of the road bore no causal connection to the accident, because the child would have been in greater danger had the truck been driven on its right half of the highway.

It is elementary that instructions should be founded on the evidence. They should be clear, complete, and without conflict. It is their object to define for the jury, and to direct their attention to, the legal principles which apply to and govern the facts which the evidence tends to prove.

Virginia Code, 1942 (Michie), section 2154 (112) reads as follows:

"Except as otherwise provided in section 2154 (114) upon all highways of sufficient width the driver of a vehicle shall drive the same upon the right half of the highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle subject to the limitation applicable in overtaking and passing set forth in sections 2154 (116) and 2154 (118)."

It is obvious, we think, that this section was enacted to give protection to persons and property on the left-hand side of the highway.

In considering an analogous provision of the Virginia statute, prescribing rules to be observed by the driver of a vehicle in making either a left or right turn at a road intersection, in *Morris* v. *Dame*, 161 Va. 545, 566, 171 S. E. 662, we said:

"These provisions of the statute create a *general* duty on the part of drivers of motor vehicles to give the prescribed signal before making a left or right turn at a road intersection. But a failure to give the signal cannot be actionable negligence as to any particular person unless the facts and circumstances of the case are such that the duty to give the signal has become a particular duty owing to that person as an individual.

"For the *general* duty imposed by the statute to become a particular duty owing to a particular person, he must be in a position which, under a reasonable construction and interpretation of the statute, brings him within the particular class of persons for whose protection from injury these provisions of it were enacted. When the general duty imposed by statute has become a particular duty owing to a particular person, the failure to give the prescribed signal becomes actionable negligence as to him, *provided* (1) that the failure to comply with the statute is not excusable, and (2) that the failure to give the required signal is the proximate cause of an injury to him which is one of the consequences con-

templated by this provision of the statute and that it was intended to prevent." (Citing cases.)

In 45 C. J., Negligence, page 727, section 113, this is said:

■ "In order that violation of a statute or ordinance may constitute negligence it is necessary that the duty created thereby should have been for the benefit of, or should have been owed to, the person claiming to have been injured through the violation, that is, he must be a person for whose protection the statute or ordinance was designed. Among statutes or ordinances to which this rule has been applied may be mentioned those relating to: The operation of motor vehicles."

To the same effect, see 38 Am. Jur., Negligence, page 834, section 163:

"To afford a right of action for injury from the violation of a statute or ordinance, the complainant's injury must have been such as the statute or ordinance was intended to prevent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

■ Code, section 2154 (112) does not change the law of negligence. The burden is still on the plaintiff to prove that the failure of the defendant to observe the duty imposed by the statute caused the injury. *Etheridge* v. *Norfolk So. R. Co.*, 143 Va. 789, 800, 129 S. E. 680.

In *Gaines* v. *Campbell*, 159 Va. 504, 514, 166 S. E. 704, it is said: "Of course, neither the violation of an ordinance nor any other act of negligence will of itself support a recovery. Between the act and the accident there must be causal connection."

In *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397, we said: "The violation of a statute, while negligence *per se*, will not support a recovery for damages unless such violation proximately caused or contributed to the injury complained of."

See also, *Harris* v. *Howerton*, 169 Va. 647, 660, 194 S. E. 692; *Pratt* v. *Miles*, 166 Va. 478, 481, 186 S. E. 27; *Kinsey* v. *Brugh*, 157 Va. 407, 411, 161 S. E. 41.

The want of a license for an automobile or its chauffeur, faulty vehicle brakes, lights, and horn, or the failure of a driver to give proper statutory signals when turning to the left or the right, each constitutes a violation of the Motor Vehicle Code of Virginia. Virginia Code, 1942 (Michie), section 2154 (48) *et seq.* But a mere breach of a particular duty imposed by statute does not make the violator guilty of actionable negligence, which will support a recovery for damages unless such violation was the proximate cause of the injury, or deny a recovery unless such violation was a contributing cause of the injury. See *Doss* v. *Rader; ante*, p. 231, 46 S. E. (2d) 434, and *Powell* v. *Virginian Ry. Co.*, *post*, p. 384, 46 S. E. (2d) 429.

There may be cases in which there are cotemporaneous circumstances which make performance of the duty imposed by a statute impracticable or excusable. Code, section 2154 (112) recognizes this by the qualification, "unless it is impracticable to travel on such (right) side of the highway." The presence of persons, vehicles, or obstructions on the highway may require a driver to drive to the left of the center of the highway. The statute was not intended to prevent a motorist from driving to the left of the center of the highway in trying to avoid an emergency, or to prevent injury to a person on the right half of the highway.[1]

The failure to observe a statutory duty is a circumstance, however, to be considered in ascertaining causal con-

[1] See *Howe* v. *Jones*, 162 Va. 442, 447, 174 S. E. 764; *Russell* v. *Kelly*, 180 Va. 304, 307, 23 S. E. (2d) 124.

nection with the injury. "Whether or not there is a direct causal connection, other than the mere violation of the ordinance, between the prohibited thing and the injury is usually a question for the jury." *Baecher* v. *McFarland*, 183 Va. 1, 31 S. E. (2d) 279.

See also, *Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838.

The plaintiff contends that instruction P-8 was approved by this court in *Gaines* v. *Campbell, supra*. There the defendant admitted that he was driving his automobile to the left of the center of the road when he struck the plaintiff's motorcycle driving on its right side of the highway. As applied to that established fact, the instruction was held not erroneous in that case.

In the present case, the testimony and the physical facts are in conflict as to whether the child was struck to the left or right of the center of the road.

In the cases of *Sheckler* v. *Anderson*, 182 Va. 701, 29 S. E. (2d) 867, and *Harris* v. *Wright*, 172 Va. 67, 200 S. E. 597, the injured child in each case entered the roadway to the left of the driver of the motor vehicle, which was being driven upon the left half of the highway.

In the case at bar, instruction P-8 told the jury that if Hamilton drove to the left of the center of the highway he was negligent as a matter of law.

Instruction D-9 told the jury that, under certain circumstances, Hamilton should not be found guilty of negligence, even though he drove his truck to the left of the center of McKinley avenue.

Instruction P-8 omitted all reference to the defense of a sudden emergency. It allowed the jury to find the defendants guilty of negligence, even though they believed the accident was excusable under the sudden emergency doctrine.

Instruction P-8 is misleading, in conflict with instruction D-9, and, under the circumstances of this case, erroneous because it directs a recovery upon a partial view of the

evidence and ignores the testimony of the defendant driver tending to show that the accident was excusable.

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for a new trial.

*Reversed and remanded.*