## Richmond

ASPHALT SERVICE COMPANY, INCORPORATED v. PEGGY THOMAS.

November 26, 1956.

Record No. 4573.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*James A. Howard* (*Breeden, Howard & MacMillan*, on brief), for the plaintiff in error,

*Ralph H. Ferrell, Jr.* and *J. B. Cowles, Jr.* (*E. Milton Farley, III; Hunton, Williams, Gay, Moore & Powell,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Asphalt Service Company, Incorporated was granted a writ of error to a judgment for $10,000 entered in favor of Peggy Thomas against it and a co-defendant, Benjamin C. Jackson. Jackson's failure to appear or plead at the trial resulted in judgment by default as to him and is not here involved.

The motion for judgment sought the recovery of damages for personal injuries sustained by the plaintiff when the Jackson automobile in which she was a passenger collided with a truck owned by the Asphalt Company.

The accident occurred during daylight hours at or near Williamsburg on April 27, 1953, at the intersection of Routes 168 and 31. A map exhibit shows that at the scene of the accident the two roads join to form a "Y", Route 168 going in a northwesterly direction to Richmond and in a southeasterly direction to Norfolk, and Route 31 extending off the "Y", going in a southerly direction to Williamsburg. Asphalt's truck, a large tank truck-tractor unit, driven by Dafton B. Noble, was headed westerly on Route 168, which is a four-lane highway. The Jackson automobile was also traveling in a westerly direction on the same highway. Noble intended to turn at the forks of the "Y" and go to Williamsburg on Route 31. This maneuver required him practically to reverse his course and turn his truck around as he turned left to enter Route 31. The collision occurred near this intersection as the Jackson car attempted to pass the Asphalt Company truck on its left.

Police Officer Lodge testified that the vehicles collided in the westbound lane, approximately 150 feet from the western edge of a safety zone designated by hatch-marks. The officer stated that a broken white line separated the two westbound traffic lanes of Route 168, each lane being eleven feet in width; that the cross-over which Noble was attempting to negotiate was located between the westbound and eastbound lanes of Route 168 immediately west of the point of impact and was 29 feet in width at its narrowest point; that the left front of the truck and the right front of the automobile were damaged in the collision.

There was evidence that the driver of appellant's truck gave no signal before attempting to make the left turn into Route 31, and that he had pulled his equipment into the northern [right hand] lane of traffic rather than keep it in the southern [extreme left hand] lane as allegedly required by Code, § 46-231(3). There was also evidence that the Jackson car was traveling at an excessive rate of speed.

■ Several questions growing out of the assignments of error are stressed on appeal, the first being: Was the verdict excessive, and in this connection did the court err in admitting certain exhibits pertaining to plaintiff's employment and earnings claimed by defendant to be too remote in point of time?

It will be remembered that the accident occurred on the 27th day of April, 1953, and the case was not tried until the 1st day of April, 1955.

There is ample proof in the record tending to show that the plaintiff was injured in the accident; that she was under the care of doctors for an extended period, and that she sustained substantial monetary losses as a result thereof. Plaintiff was a professional "singer and dancer". She was described as having been a "vivacious singer", and had worked with well-known bands. Exhibits introduced showed her employment with these entertainers ranging from 1950 to the time of the accident. The evidence disclosed that she earned "approximately $200 per week" for the year just prior to the accident.

The burden was on the plaintiff to prove the elements of her damage with reasonable certainty, and the exhibits were admissible for this purpose. There is no merit in the assignment. *Gwaltney* v. *Reed*, 196 Va. 505, 507, 508, 84 S. E. 2d 501, 502.

■ We next consider the assignments charging that the court erred in giving Instructions B and C on behalf of the plaintiff Peggy Thomas. The portion of Instruction B objected to read:

"The Court instructs the jury that the driver Noble owed to the plaintiff the following duties in operating his motor vehicle:

   \*      \*      \*      \*      \*      \*      \*

"(2) To have approached the intersection for the purpose of making a left turn in the extreme left hand lane; \* \* \*."

The instruction concluded by stating that if Noble failed in this regard "then he was guilty of negligence".

Instruction C read:

"The Court instructs the jury that the driver, Noble, was required by law, on a highway restricted to traffic in one direction, to approach the intersection for the purpose of making a left turn from the extreme left hand lane thereof, and he is not excused from complying with this law because it may have been difficult for him to turn his vehicle from the extreme left hand lane. And if you believe that he failed to so approach the intersection and that this was either the proximate cause of the accident or that his negligence combined with the negligence of Jackson concurred to cause the accident, you shall find your verdict for the plaintiff against both defendants."

These instructions intended to apply the provisions of Code, § 46-231(3), (1956 Cum. Supp., § 46-231(3); Acts of Assembly 1952, c. 666, p. 1116).[1]

The defendant, Asphalt Service Company, Inc., objected to the giving of both instructions on the ground that they required the driver of the Asphalt Company truck to do the impossible. Counsel for Asphalt suggested that both instructions should include qualifying words which would make them applicable to the undisputed facts in the case, stating that the instructions as offered and given by the court do not "take into consideration the case where it is impractical to approach from the extreme left lane which is the case in many cases and under the evidence and all of the evidence, it is the situation in this case."

Noble, the driver of the Asphalt Company truck, was asked:

"Q. You attempted to make a left hand turn from approximately the center of this road, is that right?

"A. I wasn't in the extreme one [lane] because if you had pulled in the extreme [lane] here, there would have been no way possible you could have made this turn without running over the curb."

There is no evidence in the record to contradict this statement. The description of the equipment being operated by Noble and in fact the map exhibit indicated that there would have been "no way possible"

---

[1] "§ 46-231. REQUIRED POSITION AND METHOD OF TURNING AT INTERSECTIONS; LOCAL REGULATIONS.—The driver of a vehicle intending to turn at an intersection shall do so as follows:

\*   \*   \*   \*   \*   \*   \*   \*

"(3) Left turns on other than two-way roadways: At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle \* \* \*."

for him to have made this turn, operating his equipment in the extreme left hand lane. Under these circumstances the defendant was entitled to have the instructions qualified to the extent of requiring that it was the duty of the driver of the Asphalt Company truck, before making the left turn, to have approached the intersection for the purpose of making a left turn in the extreme left hand lane or as nearly therein *as reasonably possible.*

It is argued by appellee in her brief that "a cursory reading of Instructions B and C in the instant case discloses that a 'left turn' was not in issue." If such were a fact, section (2) of Instruction B, and Instruction C should not have been insisted upon as both deal with "making a left turn".

A reasonable construction of the statute (§ 46-231(3)) would have required the driver of appellant's truck to approach the intersection for the purpose of making a left turn in the extreme left hand lane or as nearly therein as reasonably possible, using a degree of care commensurate with the hazards involved. Certainly the statute did not intend to impose an impossible duty upon the driver of licensed equipment, and therefore both instructions should have been qualified as indicated. *Birtcherds Dairy* v. *Randall,* 180 Va. 311, 317 (headnote 6), 23 S. E. 2d 229, 232; 50 Am. Jur., Statutes, § 240, p. 232, *et seq.;* 82 C.J.S., Statutes, § 323, p. 593, *et seq.*

In view of the conclusion here reached there is no necessity for our considering the remaining assignments of error, one of which deals with the inadvertent statement of a witness regarding liability insurance; another deals with alleged misconduct of counsel; and another with the court's amendment of the jury's verdict after the jury had been discharged, as they are not likely to recur upon a retrial.

For the reasons assigned, the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*