## Richmond

JULIUS A. WILLIAMS v. CHESAPEAKE BAY BRIDGE AND
TUNNEL DISTRICT, ET AL.

April 22, 1968.

Record No. 6576.

Present, All the Justices.

*Armand L. Levy* (*Goldblatt & Lipkin*, on brief), for plaintiff
in error.

*Edwin C. Kellam* (*Kellam and Kellam*, on brief), for defendants
in error.

I'ANSON, J., delivered the opinion of the court.

Plaintiff, Julius A. Williams, filed a motion for judgment against
the defendants, Chesapeake Bay Bridge and Tunnel District, herein-
after referred to as the District, and Virginia National Bank, Trustee,
to recover $1,081.37 alleged to be due him in severance benefits under
a resolution adopted by the Chesapeake Bay Bridge and Tunnel
Commission, the governing body of the District, hereinafter referred
to as the Commission. A jury trial was waived, and at the conclusion
of plaintiff's evidence the trial court sustained defendants' motion to

strike out plaintiff's evidence and entered summary judgment for the defendants. To this judgment we granted plaintiff a writ of error.

Plaintiff contends that the trial court erred in striking his evidence and entering summary judgment for the defendants.

The record shows that under the provisions of § 403 (g) of a trust indenture between the Commission and Virginia National Bank, as trustee, dated July 1, 1960, the Commission was empowered to provide severance benefits for certain employees of the District whose services would terminate with the discontinuance of the ferries operating between Little Creek and Kiptopeke, Virginia. The underlying purpose of this severance benefit program was to keep the employees on the job and the ferries operating until the Chesapeake Bay Bridge-Tunnel opened for traffic.

On September 27, 1961, the Commission adopted a resolution setting forth who would be eligible for severance benefits and on what terms. The pertinent parts of the resolution are as follows:

"(A) *ELIGIBLE EMPLOYEES:* Each employee of the Chesapeake Bay Bridge and Tunnel District (hereinafter called the 'District') rendering service in connection with the Existing Ferry Service who has been regularly employed by the District for thirty (30) days or longer on the day the bridge-tunnel is opened to the public for travel (hereinafter called the 'Opening Date'), and whose employment with the District is severed on said Opening Date * * * as a consequence of termination of such Existing Ferry Service, shall be eligible for Severance Benefits, provided he falls in one of the following three (3) categories:

(1) The employee is on the active payroll of the District on the Opening Date; or
(2) The employee, at the pleasure or request of the District, is on furlough or leave of absence from the District on the Opening Date; or
(3) The employee is on furlough or leave of absence from the District on the Opening Date because of having been drafted in the Military Service of the United States.

\* \* \* \* \*

"(C) *SERVICE PAY:* An Eligible Employee's Service Pay shall be computed on the basis of the following:

(1) *SERVICE:* Service upon which an Eligible Employee's

Service Pay is to be based shall be the period of employment, including all sick leave with pay and all vacation leave with pay, during which the employee has been last continuously employed without interruption immediately before the date the Eligible Employee's employment is severed as a consequence of termination of such Existing Ferry Service and after the date of the adoption of this resolution except as follows:

(a) Sick Leave without pay, or any leave of absence approved by the District but without pay, shall not cut off the period of employment immediately previous to any such leave but no Service Pay shall be computed on the basis of any time spent on such Sick Leave without pay or such leave of absence approved by the District but without pay."

Plaintiff was regularly employed by the District from April 1957 until October 20, 1963, when he became ill. The hospital records show that he was hospitalized from October 22, 1963, to March 13, 1964, and was still under treatment as an outpatient when the bridge-tunnel opened for traffic on April 15, 1964. Plaintiff said that before he entered the hospital on October 22, 1963, he was advised by Mr. Richardson, the personnel manager of the District, that he would be on sick leave without pay and that his job would be waiting for him when he got back.

While plaintiff was in the hospital he received a letter from J. Clyde Morris, "Executive Secretary" of the District, dated February 3, 1964, inquiring whether he and "certain employees of the Chesapeake Bay Bridge Tunnel District" desired continued employment after the opening of the bridge-tunnel. He signed a statement form indicating that he did want to continue his employment with the District and promptly returned it to Morris. Another letter from Morris, dated April 14, 1964, which was signed by him as "Executive Director" of the District, informed plaintiff that his employment had been terminated as of April 15, 1964, and that a "substantial severance benefit program has been established in your behalf."

Plaintiff argues that he was on sick leave or leave of absence without pay when his employment was terminated at the time the bridge-tunnel was opened for traffic on April 15, 1964, and under the provisions of §§ A(2) and C(1-a) of the Commission's resolution he was entitled to the severance pay claimed.

On the other hand, the District argues that since plaintiff was not on its active payroll at the time the bridge-tunnel opened for traffic he was not entitled to severance pay under any of the provisions of the Commission's resolution.

We have repeatedly said that in ruling on a motion to strike plaintiff's evidence all inferences which may be fairly drawn from the evidence must be considered most favorably to the plaintiff, and where there are several inferences which may be drawn, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless the inferences be strained, forced or contrary to reason. *Richardson* v. *Hackett*, 204 Va. 847, 849, 134 S. E. 2d 312, 314 (1964); *Frye* v. *Alford*, 203 Va. 461, 465, 125 S. E. 2d 177, 180 (1962).

The District's argument that the plaintiff had to be on the active payroll when his employment was terminated on the opening day of the bridge-tunnel to be eligible for severance pay diregards the other two categories of eligibility provided for by the resolution. Section A(2) provides that employees on leave of absence from the District on the "Opening Date" are eligible for severance pay.

It is apparent from the language used in § A(2), when it is read in the light of and interpreted along with the provisions of § C(1-a), that the Commission intended to include within the meaning of the term "leave of absence" an employee granted sick leave without pay. This latter section specifically provides that sick leave without pay, or any leave of absence without pay approved by the District, does not cut off the period of employment immediately previous to any such leave. Thus if plaintiff was granted sick leave without pay, he was on leave of absence when his employment was terminated on the opening day of the bridge-tunnel and he would be eligible for severance benefits.

Plaintiff's testimony shows that the personnel manager of the District told him that he was on sick leave without pay and his job would be waiting for him when he returned to work. Moreover the letter dated February 3, 1964, addressed to plaintiff, indicates that at that time he was regarded by the District as an employee, and the letter dated April 14, 1964, from the Commission's executive director, shows that plaintiff's employment, and thus his leave of absence, was terminated on April 15, 1964, as a consequence of the opening of the bridge-tunnel. The April 14 letter also advised plaintiff that a severance benefit plan had been provided for him.

Plaintiff's evidence that he had been granted a leave of absence

because of illness presented a factual issue which made out a prima facie case, and put upon the defendants the burden of going forward with the evidence. Hence we are of the opinion that the trial court erred in striking plaintiff's evidence.

For the reasons stated, the judgment of the court below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*