# Richmond

## CATHERINE C. FISHER v. FRANCIS G. GORDON, III.

January 19, 1970.

Record No. 7058.

Present, All the Justices.

*James A. Eichner* (*Allen, Allen, Allen & Allen,* on brief), for plaintiff in error.

D. B. *Marshall* (*Paxson, Marshall & Smith,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This is a law action brought by Catherine C. Fisher against Francis G. Gordon, III, to recover damages for personal injuries received in a motor vehicle collision. At the conclusion of all of the evidence, defendant moved to strike the evidence on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The trial court sustained the motion and entered summary judgment for the defendant. To review that ruling plaintiff was awarded a writ of error.

The accident occurred on January 29, 1966, about seven miles north of Charlottesville on Route 29 in Albemarle County. The highway there is a four-lane divided highway separated by a grass median strip approximately 25 feet wide. The hard surface of the southbound roadway is 24 feet 3 inches wide. The accident occurred at a crossover which permits southbound traffic to cross over to the northbound roadway. Traveling from north to south the road slopes down slightly for 250 to 300 yards and then begins a gradual incline. The crossover is located just past the point where the incline begins.

At the time of the accident a heavy snow was falling and there was an accumulation of four to five inches of new snow on the road, making it impossible to see the lane markings. Driving conditions "were very poor" and most of the southbound traffic "was using one lane, just going near the center of the road."

Appellant, whose car was equipped with snow tires and chains, was proceeding south on Route 29. Because of the hazardous road conditions she decided to return to her home. In order to do this, she resolved to reverse her direction by driving through the crossover to the northbound lanes. As she was turning into the crossover the collision occurred.

Appellant testified that she was driving in the tracks of the cars which had preceded her and that these tracks were approximately in the center of the southbound roadway, straddling the center line. She did not change her position before attempting the turn but remained in these tracks because she did not believe that there was enough distance for another car to pass between the left side of her car and the snow which was piled up near the left side of the road to a depth of two to three feet as the result of an earlier snowfall.

Appellant further testified that, in preparation for the turn, she turned on her left turn signal light "just about at the crest of that hill," which was 250 to 300 yards from the point where the accident occurred. Appellant's son, David Fisher, who was riding with her at the time, testified that he noticed his mother turn on the blinker signal "about 100 yards from where the wreck occurred."

Mrs. Fisher further testified that the rear view mirror inside her car afforded no visibility to the rear because the rear window of her station wagon was covered with snow and fog, as were all the windows of her car except the windshield. Her testimony was that she rolled down her side window about 150 feet from the crossover and looked in her side view mirror, which was clear of snow or fog, and she did not observe any vehicles behind her. She then gave a hand signal of her intention to turn to the left.

Prior to the time appellant began her preparations to turn she had been traveling at a speed of approximately 25 miles per hour but had slowed down to about 15 miles per hour by the time she attempted to turn.

When the collision occurred the front of appellant's car had already entered the crossover, with the front seat being approximately at the left edge of the southbound roadway. The impact was between the left rear door of the appellant's car and the front of the appellee's car.

Appellant testified that she never saw appellee's car before the collision, but that she "heard this terrific roar just before he hit us." Appellant's son, Ray Fisher, who was a passenger sitting in the rear seat beside the left door, stated that he did not see the other car before the crash but that he did hear the other car just a split second before the impact. David Fisher, who was riding in the front seat on the right side, testified that he saw appellee's car through his mother's open side window just at the moment of impact but that his mother's car was already in the turn at that time and it was too late to do anything.

Appellee testified that he first noticed the appellant's car when he was at a distance of a hundred yards behind it, that he then estimated its speed to be slower than his own, and that he decided that because of the incline ahead he would attempt to pass appellant's car rather than take a chance of not being able to negotiate the hill ahead. He therefore pulled to the left in an attempt to pass appellant's car. He stated that he did not see the hand signal given by appellant nor did he see the blinker signal until "when I got beside the car. When

my body was beside where the blinker would be on the car I noticed it." At that time he estimated his speed to be approximately 35 to 40 miles per hour. He testified that he did not sound his horn or give any signal of his intention to pass and that there was only a split second between the time he noticed appellant's blinker signal and the impact.

In the trial court, the appellee based his motion to strike the evidence on the ground that appellant's alleged violations of Code §§ 46.1-206 (b), 46.1-215 (c), and 46.1-216 rendered her guilty of negligence as a matter of law.

This court has stated that on considering a motion to strike the evidence "all inferences which may be fairly drawn from the evidence must be considered most favorably to the plaintiff, and where there are several inferences which may be drawn, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless the inferences be strained, forced or contrary to reason." *Williams* v. *Chesapeake Bay Bridge and Tunnel Dist.*, 208 Va. 714, 717, 160 S.E. 2d 573, 575 (1968). See also *Richardson* v. *Hackett*, 204 Va. 847, 849, 134 S.E. 2d 312, 314 (1964), and *Thornhill* v. *Thornhill*, 172 Va. 553, 557, 2 S.E. 2d 318, 320 (1939).

"In this Commonwealth, we follow the salutary rule that questions of negligence should, if at all appropriate, be left to the determination of the jury. This is because such questions, ordinarily, can only be determined by the sifting and appraisal of facts—matters which are exclusively within the province of the jury. (citations omitted)

"The trial court is empowered to step in and decide such questions, as matters of law, in a proper situation, thereby withdrawing from the jury any consideration thereof. But this course should be followed by the court only when reasonable men should not differ as to the conclusion to be reached from the facts and where one, and only one, conclusion, as a matter of law, is warranted. (citations omitted)" *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S.E. 2d 18, 21 (1962).

With these principles in mind, we must view appellant's evidence and the statutes involved to determine whether or not she was, in fact, negligent as a matter of law.

Where nature has created hazardous conditions on a highway, and such hazardous conditions are open and obvious, the operator of a motor vehicle is required to take care in the operation of his

vehicle proportionate to the known dangerous condition of the highway. *Webb* v. *Smith*, 176 Va. 235, 10 S.E. 2d 503 (1940).

█ Code § 46.1-206 provides that "Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

\* \* \*

"(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety; \*\*\*" Here the evidence shows conclusively that the lane markings were not visible because of the heavy snow covering the roadway and that the appellant was traveling in the tracks established by the traffic preceding her.

In these circumstances § 46.1-206 would have no application. Here a jury issue is created and the proper test would be whether each of the parties was exercising care proportionate to the known and obvious dangerous condition of the highway.

█ Code § 46.1-215 (c) provides, in part, that " . . . at any crossover from one roadway of a divided highway to another roadway thereof . . . the driver of a vehicle intending to turn left at any such . . . crossover shall approach the . . . crossover in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle . . . ."

The court has had occasion to consider the applicability of the predecessor of the current statute.[1] We said "A *reasonable construction of the statute* (§ 46-231 (3)), would have required the driver of appellant's truck to approach the intersection for the purpose of making a left turn in the extreme left-hand lane or *as nearly therein as reasonably possible, using a degree of care commensurate with the hazards involved.*" (emphasis supplied) *Asphalt Service Co.* v. *Thomas*, 198 Va. 490, 494, 95 S.E. 2d 141, 144 (1956).

Whether or not appellant was "as nearly therein as reasonably possible" would appear to be a proper question for the jury. Appellant testified that she did not "think that there was more than five feet" distance between her car and the snow which was piled up "quite close" to the left edge of the pavement. She went on to state that "I just cannot believe there was enough room for a car to come around me. It never occurred to me that anybody would try to go around me." Considering the testimony and the fact that appellant

[1]Code, § 46-231 (3), Acts of Assembly 1952, c. 666, p. 1116.

could not see the lane markings, it is quite possible that reasonable men might conclude that she was entirely justified, under the hazardous conditions which existed, in driving in the tracks of other cars rather than risk going further to her left into the heavy, undisturbed snow.

Code § 46.1-216 provides in part that "Every driver who intends to . . . turn . . . from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give such signals as are required . . . ." We have held that this code section does not make the driver an insurer of the safety of his turn. Instead he is held merely to the use of "reasonable and ordinary care under the circumstances to see that such movement can be made safely." *Smith* v. *Clark*, 187 Va. 181, 190, 46 S.E. 2d 21, 25 (1948). See also *Sink* v. *Masterson*, 191 Va. 618, 61 S.E. 2d 863 (1950) and *Matthews* v. *Hicks*, 197 Va. 112, 87 S.E. 2d 629 (1955).

In the present case, appellant gave both a blinker signal and a hand signal for more than the distance required by statute. Although her view through her inside rear view mirror was obstructed, she rolled down her side window and looked in her outside mirror to the rear and did not observe any vehicles behind her. She also slowed down to 15 miles per hour before attempting the turn.

Whether, under the circumstances and adverse weather conditions that existed at the time of the accident, appellant was negligent in failing to keep a proper lookout and in making the left-hand turn as she did are questions upon which reasonable men might differ. Thus they are questions for the jury.

For the reasons stated, the judgment is

*Reversed and remanded.*

COCHRAN, J., dissenting.

I disagree with the majority opinion that the appellant was not guilty of contributory negligence as a matter of law. She made a left turn under hazardous weather conditions directly across the path of appellee's car which was overtaking and passing her. A glance to her left, however fleeting, immediately before beginning her turn would have revealed the other vehicle.

By her own testimony appellant was driving south through snow in the tracks of other vehicles straddling the center line that divided the two southbound lanes. Her left turn signal was on. When about

50 yards from the crossover she rolled down her side window, looked in her outside rear view mirror, saw nothing and gave a left-turn hand signal. She thought she was not more than five feet from the snow bank close to the left edge of the pavement. She was certain that there was not enough room for a car to pass her going south. Obviously, she was wrong. It never occurred to her that anybody would attempt to pass her. This explains but does not excuse her failure to look to her left.

The majority opinion would leave it to a jury to determine whether appellant was as nearly as reasonably possible within her left-hand lane under the requirements of Code § 46-231(3), as construed in *Asphalt Service Co. v. Thomas*, 198 Va. 490, 494, 95 S.E.2d 141, 144 (1956). But appellee's car was between appellant and the left edge of the pavement. This uncontroverted fact establishes to my satisfaction that appellant could not possibly be found to have complied with Code § 46-231(3).

Further, appellant had the duty under Code § 46.1-216 to see that her turn could be made with reasonable safety. In making the turn from her position in the road she could not and did not discharge this duty by looking into an outside mirror 50 yards from the crossover.

As this court has said in *Nehi Bottling Co. v. Lambert*, 196 Va. 949, 958, 959, 86 S. E. 2d 156, 161 (1955):

> "Plaintiff either failed to look when looking would have been effective or he [she] failed to heed when he [she] saw or should have seen . . . .
>
> " 'The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same'. *Yellow Cab Co. v. Eden*, 178 Va. 325, 341, 16 S. E. 2d 625, 631."

Whether appellant failed to look when looking would have been effective or looked and failed to see appellee's car overtaking and passing her she was equally negligent. "When a situation is open and obvious, one will not be heard to say that he looked and did not see." *Russell v. Kelly*, 180 Va. 304, 309, 23 S. E. 2d 124, 126, 127 (1942); cited in *Nehi Bottling Co. v. Lambert, supra,* at 957, 86 S. E. 2d at 160. See also *Matthews v. Hicks*, 197 Va. 112, 115, 87 S. E. 2d 629, 631 (1955), and cases there cited.

I would affirm the judgment of the lower court.

I'Anson and Gordon, JJ., join in this dissent.