## Richmond

VIRGINIA ELECTRIC AND POWER COMPANY

v.

STATE CORPORATION COMMISSION AND DIVISION
OF CONSUMER COUNSEL OF THE OFFICE OF THE
ATTORNEY GENERAL

Record No. 831040.

January 20, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and
Gordon, Retired Justice.

*Evans B. Brasfield (John W. Riely; Patricia M. Schwarzschild; Hunton & Williams,* on brief), for appellant.
*Anthony Gambardella, Senior Assistant Attorney General; Kentworth E. Lion, Jr. (Gerald L. Baliles, Attorney General; Elizabeth B. Lacy, Deputy Attorney General; James C. Dimitri, Assistant Attorney General; Lewis S. Minter; Donald G. Owens,* on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

Virginia Electric and Power Company (Vepco), appealing as a matter of right from orders entered by the State Corporation Commission in a rate-making case, complains that the procedures employed below denied the Company certain constitutional and statutory rights. The Office of the Attorney General, Division of Consumer Counsel, joins the Commission in defense of the appeal.

The case grows out of Vepco's application, filed March 31, 1983, seeking an increase in annual revenues of $175.2 million to take effect in two steps. For the first step, Vepco requested an expedited increase of $44 million to become effective May 1, 1983, subject to refund. For the second step, the Company requested another increase of $131.2 million, suspended until Au-

gust 29, 1983. Two components of the increase requested in the second step were: (1) $28 million attributable to a proposed increase in the rate of return on common equity from 15% to 16% and (2) $64.9 million attributable to a recovery of the investment in North Anna Unit 3 (a nuclear unit cancelled by Vepco as economically unjustified in November 1982) and a return on that investment while it is being written off.

In compliance with Commission rules, Vepco filed 37 schedules and two volumes of testimony and exhibits in support of its application. On April 22, 1983, the Commission, with one member dissenting, entered an "Interim Order". Addressing the first component of the second-step request, the Commission noted that "[i]nflation has abated", that "[i]nterest rates have dropped significantly", and that "the financial condition of Vepco has improved" since the time the 15% rate on equity return was prescribed. Based upon a review of the pre-filed evidence and "the Commission's own knowledge of the cost of capital", the Commission ruled that "no increase in the authorized equity return is warranted."

With respect to the second component of Vepco's second-step request, the Commission found "Company's prefiled testimony . . . inadequate on its face", "conclusory in nature", and unsupported by introduction of "the studies alluded to in the testimony" or by "any of the data necessary to validate the assumptions and findings contained in such studies." In view of the "magnitude of [the proposed] write-off" and because of Vepco's "scant attention to . . . critical issues", such as why "North Anna Unit 3 should not have been cancelled sooner", the Commission severed the cancellation issue but provided that this component of Vepco's request would be the subject of "a separate, independent investigation by this Commission" to be conducted in December 1983.[1]

In a petition for reconsideration dated April 27, 1983, Vepco argued that it was given "no opportunity to respond to the assertions on which the Commission's summary disposition [was] based" and that by taking such action without giving the Com-

---

[1] Finding that the $175.2 million request exceeded the Consumer Price Index limitation, the Commission also denied the first-step request. Accordingly, the Commission ordered Vepco to file new schedules revised to reflect the effects of the Interim Order, suspended the tariffs to be proposed in such schedules until August 29, 1983, and set a hearing on the revised proposal for July 19, 1983. Vepco complied, the period of suspension expired, and new rates became effective, subject to refund, on August 29, 1983.

pany an opportunity to be heard, the Commission deprived the Company of due process of law" and of "a valuable right given to it by statute". By order entered May 13, 1983, the Commission concluded that it had the power to make summary disposition of a rate-making application based upon pre-filed evidence, rejected Vepco's complaints, and, except in one particular not involved in this appeal, declined to modify the Interim Order.

On appeal, Vepco poses the constitutional and statutory issues raised in its petition for reconsideration. An analysis of those issues entails a review of the statutes which govern the rate-making process.

A public utility is required to furnish the public "reasonably adequate service and facilities at reasonable and just rates". Code § 56-234. "If upon investigation the rates . . . shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or . . . preferential . . . the State Corporation Commission shall have power to fix and order" different rates. § 56-235. "At any hearing on the application of a public utility for a change in a rate . . . the burden of proof . . . shall be upon the public utility" and the Commission is required "to prescribe . . . rules and regulations for the conduct of such hearings which shall provide for full and fair participation in such hearings by any interested person". § 56-235.3.

"Every public utility shall be required to file with the Commission . . . schedules showing rates and charges". § 56-236. If a public utility decides to change the rates shown in those schedules, it must provide the Commission and the public 30-days' notice and file revised schedules. § 56-237. Upon notice given the utility before the expiration of the 30-day period, the Commission "may suspend the enforcement of any or all of the proposed rates . . . for a period not exceeding one hundred fifty days from the date of filing" of the revised schedules. § 56-238. During the period of suspension, the Commission "shall investigate the reasonableness or justice of the proposed rates . . . and thereupon fix and order substituted therefor such rates . . . as shall be just and reasonable." *Id.* If the Commission does not order substituted rates before the expiration of the 150-day suspension, the rates proposed by the company will become effective at that time, subject to refund to the ratepayers of any portion of the increased revenues collected which the Commission may later determine was unjustified. *Id.* If the Commission does not enter an order of suspen-

sion, the proposed rates go into effect on the date specified in the proposal, "subject, however, to the power of the Commission, upon investigation thereafter, to fix and order" different rates; and in the event the Commission later orders different rates, it may require the utility to refund the difference in revenues collected. § 56-240.

The statutory scheme protects the consumer against unreasonable and unjust utility rates. When a utility files a rate-change request, the public is guaranteed the right to force "a public hearing concerning the lawfulness of the proposed rate." § 56-237.2. The General Assembly also recognized the interests of both consumers and company owners in maintaining the financial viability of companies which provide utility services. An investor-owned company cannot survive absent the guarantee of § 56-235.2 of its right to earn "a fair return on the . . . rate base used to serve . . . customers". And to insure the enjoyment of that right, the legislature required the Commission to prescribe rules "for the conduct of . . . hearings which shall provide for full and fair participation in such hearings by any interested person". § 56-235.3. Thus, the General Assembly struck a public policy balance between the competing interests of ratepayers and company stockholders.

We have consistently recognized that a public utility seeking a rate change is entitled to procedural due process of law. *See e.g. Fairfax County* v. *C & P Tel. Co.*, 212 Va. 57, 62, 182 S.E.2d 30, 33 (1971); *Commonwealth* v. *VEPCO*, 211 Va. 758, 772, 180 S.E.2d 675, 685 (1971); *Norfolk* v. *Virginia Electric, Etc., Co.*, 197 Va. 505, 518, 90 S.E.2d 140, 149 (1955); *Appalachian Power Co.* v. *Com'th*, 132 Va. 1, 9, 110 S.E. 360, 363 (1922). The question here is what process was due.

As we construe legislative intent, the statutory complex contemplates that all parties involved in rate-making proceedings such as those instituted below be afforded fair notice and an opportunity to introduce evidence and be heard before the Commission renders its decision.[2]

---

[2] The Commission and Vepco disagree on the relevance of Va. Const. art. IX, § 3, which provides in part:

> Before the Commission shall enter any finding, order, or judgment against a party it shall afford such party reasonable notice of the time and place at which he shall be afforded an opportunity to introduce evidence and be heard.

The Commission says that "this provision applies to the Commission's judicial proceedings" but not to proceedings on "utility rate applications". One of the sources of section 3

■ Contesting such a construction, the Commission declares that this Court has "specifically concluded" that the Commission's power to enter summary judgment on pre-filed evidence is not constrained by notice and hearing requirements. For that proposition, it cites a passage from our opinion in *Blue Cross v. Commonwealth*, 221 Va. 349, 357, 269 S.E.2d 827, 832 (1980), where we held that "in view of the Commission's specialized internal procedure dealing with pre-filed testimony, the Commission did not err in deciding the constitutional issue on summary judgment under the circumstances of this case."

It is true we upheld the Commission's authority to enter summary judgment on pre-filed evidence in that case. But *Blue Cross* was not a rate-making case, and in any event our holding concerning summary judgment, limited as it was to the procedural circumstances under which the Commission reached its decision, was not as broad as the Commission seems to believe it was. There, the Attorney General and certain intervenors appeared as interested parties and filed motions for summary judgment against Blue Cross. The Commission authorized Blue Cross to file testimony and exhibits in support of its position, scheduled an evidentiary hearing, and entertained oral argument on the motions. Not until then did the Commission exercise its authority to enter judgment on pre-filed testimony. Blue Cross was afforded formal notice, time to prepare and present evidence, and an opportunity to be heard, and the evidence was viewed by the Commission and reviewed by this Court in the light most favorable to Blue Cross. In following such "specialized internal procedure", the Commission fully satisfied the requirements of procedural due process.[3]

---

was the third paragraph of § 156(b) of the 1902 Constitution which contained a similar notice and hearing clause, and Vepco contends that, since the constitutional ancestor was expressly applicable to rate-making proceedings, the current provision should be so construed. In light of our construction of the statutory scheme, we need not decide that question.

[3] Part 3 of this Court's Rules governing "Practice and Procedure in Actions at Law" authorizes trial courts to enter summary judgment on a motion to strike the evidence. Rule 3:18. That authority is constrained by guidelines defined in case law. *See e.g. Williams* v. *Vaughan*, 214 Va. 307, 310, 199 S.E.2d 515, 517 (1973); *Williams* v. *Chesapeake Bay Bridge*, 208 Va. 714, 717, 160 S.E.2d 573, 575-76 (1968). For purposes of due process, those guidelines and the principles upon which they rest apply with equal, if not greater, logic to the authority of the Commission to enter summary judgment on pre-filed evidence. In actions at law, all the issues are framed by adversary pleadings, discovery is conducted, and the plaintiff learns in advance what evidence will be necessary to survive a motion to

No such procedure was followed in the case at bar. Three weeks after the filing of the application for a change in rates, the Commission entered an order denying one component of Vepco's second-step request and severing another. No motion for summary judgment had been served on Vepco, and the Company was unaware that summary action was under consideration. The Commission proceeded *sua sponte*, reached its decision *in camera*, and in the process afforded Vepco, an "interested person" entitled to "full and fair participation", no opportunity to be heard.

The Attorney General believes that "Vepco received a hearing which satisfies the requirements of due process of law." Unlike the Commission, the Attorney General acknowledges that "[t]he Virginia Constitution and statutes provide that a party in the position of Vepco 'be afforded an opportunity to introduce evidence and be heard.' Va. Const., Art. IX, § 3 (1971); *Va. Code* § 12.1-28 (Repl. Vol. (1981))." *See* note 2, *supra*. But, the Attorney General reasons, the constitutional and statutory right "to introduce evidence" was satisfied by the right to submit pre-filed testimony and exhibits and supplemental proof, and the Commission's rules 7:7, 7:8 and 7:9 (which authorize an interested party to submit legal argument orally, on brief, and in a petition for reconsideration) satisfied Vepco's right to "be heard".

We cannot accept such reasoning. The opportunity to be heard, an essential feature of the right to due process, is meaningless when afforded only *ex post facto*. Until the moment the Interim Order was published, Vepco had no warning that the Commission contemplated summary disposition of its application and, thus, no reason to file a brief or seek an audience to present oral argument in support of its request. And we do not believe Vepco waived its right to be heard by failing to present argument on the merits of its application in the body of its petition for reconsideration. Obviously, argument made in response to a decision already rendered does not carry the weight of argument, direct and in rebuttal, presented during the course of consideration. At the time the petition was filed, the merits had been substantially decided against Vepco in its absence, and the question then in issue was whether Vepco had been afforded procedural due process *before* the decision was rendered. That is the crucial issue on this appeal.

strike. A public utility seeking a rate change is required to pre-file its evidence without benefit of such forewarnings.

Having in mind the intendment of the statutory scheme as we have construed it, we are of opinion that the process due in this case was no less than the process pursued by the Commission and approved by this Court in *Blue Cross*, and we hold that the procedures followed below violated the mandates of U.S. Const. amend. XIV, § 1, and Va. Const. art. I, § 8.

■ Our holding does not extend to the order severing the $64.9 million request relative to cancellation of the nuclear unit. Because that order affords Vepco full opportunity to introduce evidence and be heard in a pre-scheduled proceeding, we find that order constitutionally sufficient, and we will uphold the Commission's action. However, we will reverse the order denying the $28 million request relative to return on common equity and remand the case for further proceedings.

■ Our holding on the constitutional challenge does not end our inquiry. Vepco contends that the Commission violated the statutory commands of § 56-238 and "denied Vepco the right to commence recovering additional revenues at the end of the 150-day suspension period [August 29, 1983]." Consequently, Vepco asks us to instruct the Commission on remand to hold hearings on both the cancellation issue and the equity-return issue and to "allow Vepco to place in effect, subject to refund, the rates that would have gone into effect but for the Commission's orders."

Since Vepco concedes on brief that, if the Commission's action was constitutionally sufficient, "there is no violation of § 56-238", and because we have upheld the order scheduling separate proceedings on the cancellation issue, we leave the determination of all questions related to that issue to the sound discretion of the Commission.

■ We also decline to instruct the Commission to allow the rate schedules geared to the proposed increase in return on equity to go into effect on August 29, 1983. Neither the Commission nor this Court has power to impose such retroactive rate increases and, thus, to deprive ratepayers of their right to require public hearings, § 56-237.2, and their right to "full and fair participation in such hearings", § 56-235.3.

Instead, we will instruct the Commission on remand to vacate its order insofar as it denies the requested increase in return on equity. Within 30 days from the date of our mandate, the Commission will enter a new order, reinstating Vepco's application and pre-filed evidence concerning that request and suspending enforce-

ment of the rates proposed for a period not exceeding 150 days from the date of the new order. During the period of suspension, the Commission will schedule and conduct a public hearing, affording all interested persons reasonable notice and the opportunity for full and fair participation, including the right to introduce evidence and be heard. Following such hearing but before expiration of the period of suspension, the Commission may enter an order fixing such different rates as it may find just and reasonable. Absent such order, the rates proposed by Vepco will become effective on the day following the period of suspension, subject to refund to the ratepayers of any portion of the revenues collected which the Commission may later determine was unjustified.

*Affirmed in part,*
*reversed in part,*
*and remanded.*