## COMMONWEALTH OF VIRGINIA, *Ex. Rel.*, etc.

### v.

## NATIONAL COUNCIL ON COMPENSATION INSURANCE, ET AL.

Record No. 890111

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* and Whiting, JJ., and Cochran, Retired Justice

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Martha B. Brissette, Assistant Attorney General (Mary Sue Terry, Attorney; H. Lane Kneedler, Chief Deputy Attorney General; Gail Starling Marshall, Deputy Attorney General*, on briefs), for appellant.

*Peter B. Smith (Lewis S. Minter; Stewart E. Farrar; Anthony Gambardella; Michael D. Thomas*, on brief), for appellee State Corporation Commission.

No brief or argument for appellee National Council on Compensation Commission.

Chief Justice Carrico delivered the opinion of the Court.

On June 27, 1988, the National Council on Compensation Insurance (the National Council)[1] applied to the State Corporation

---

[1] The National Council on Compensation Insurance is a rate service organization which prepares and files applications for rate increases on behalf of insurance companies writing workers' compensation insurance in a number of states. It files for such increases in Virginia pursuant to authority granted by Code § 38.2-2004.

Commission for approval of a 25.2% increase in the overall level of premiums charged for policies of workers' compensation insurance. The Division of Consumer Counsel, Office of the Attorney General, filed notice of its intention to participate in the proceeding in opposition to the application.

On October 21, 1988, after two hearings, the Commission entered a final order approving a 5.7% rate increase. Consumer Counsel is here on an appeal of right. The sole question for decision is whether the Commission erred in limiting Consumer Counsel's cross-examination of a staff witness who changed his testimony following the initial hearing on the National Council's application. Finding that the Commission erred in this respect, we will reverse.

The witness in question, Philip O. Presley, president of an actuarial consulting firm, was retained by the Commission staff. In his prefiled testimony, he stated that an average increase in workers' compensation rates of only 0.7% was warranted. Two consultants retained by Consumer Counsel stated in their prefiled testimony that a 1.3% reduction in rates would be proper.

In the initial hearing on the rate-increase application, held September 14-15, 1988, Consumer Counsel, in an opening statement, pointed out that the staff's recommendation of "only a .7 percent increase" and Consumer Counsel's proposal for a "reduction in the order of 1.3 percent" were "not too dissimilar." Then, when staff-witness Presley testified and reiterated his recommendation for a rate increase of only 0.7%, Consumer Counsel elected not to cross-examine the witness. Upon conclusion of the hearing on September 15, 1988, the Commission took the matter under advisement.

On September 27, 1988, the Commission directed a letter to Consumer Counsel enclosing a copy of a letter the Commission had received from Presley. In his letter, Presley stated that he had made certain errors in his earlier computations and that revisions he had made would produce a rate increase of 5.7%, rather than 0.7%.

On September 28, Consumer Counsel filed "Comments on Corrections to Testimony of Philip O. Presley." In the "Comments," Consumer Counsel requested that Presley's "amended testimony be stricken because [untimely filed]" and because "[n]o reasonable opportunity to prepare cross-examination ha[d] been afforded the parties." The "Comments" also stated that the parties had not

been allowed a "reasonable opportunity . . . to test the credibility of this amended testimony through rebuttal testimony or further cross-examination."

Also on September 28, the Commission entered a final order approving a 5.7% rate increase, reflecting the new percentage increase recommended by Presley. On September 30, Consumer Counsel filed a notice of appeal and a motion for suspension of the Commission's final order. That same day, the Commission *sua sponte* entered an order suspending the order of September 28 and setting a hearing on October 7 "for the limited purpose of permitting [the] parties to cross-examine and offer rebuttal testimony with respect to the amended testimony and exhibits of Philip O. Presley."

During the hearing on October 7, staff counsel examined Presley on the reason for his change in testimony. The witness stated that he had been misled by an unlabeled column of a financial exhibit included in the National Council's original filing and that correction of his erroneous reading of the exhibit produced the higher recommendation for a rate increase. Presley admitted that he had changed his testimony after conferring not only with Commission staff but also with the National Council.

On cross-examination, Consumer Counsel sought to question Presley about the reasonableness of calculations shown in the National Council's financial exhibits regarding yields on securities. Consumer Counsel also sought to question Presley about his possible bias resulting from prior "business dealings" with the National Council. When the propriety of this questioning was challenged on the ground that ample opportunity had been provided for cross-examination at the initial hearing, Consumer Counsel attempted to explain why cross-examination of Presley had been waived.

The Commission ruled, however, that, by electing not to cross-examine Presley at the September 14-15 hearing, Consumer Counsel waived the right to cross-examine him during the October 7 hearing except with respect to his amended testimony. Then, on October 21, the Commission entered a final order reaffirming its previous action in approving a 5.7% increase in rates.[2]

---

[2] The Commission stated in its final order of October 21, 1988, and complains on appeal, that Consumer Counsel did not request an opportunity to cross-examine Presley or to offer rebuttal evidence either before or after the order of September 28, 1988, which approved the 5.7% rate increase recommended by Presley. This position, of course, overlooks

On appeal, the Commission[3] concedes that participants in rate-making proceedings, albeit such proceedings are legislative in nature, are entitled to cross-examine witnesses and that the bias of an expert and the factors underlying his evaluation are relevant and material. The Commission also concedes that considerations of due process require it to grant consumers a fair hearing with a full opportunity for cross-examination.

The Commission argues, however, that it did not err in limiting Consumer Counsel's cross-examination of staff witness Presley at the October 7, 1988 hearing. The Commission says that when Consumer Counsel declined at the hearing of September 14-15 to cross-examine Presley, Consumer Counsel knew the methodologies employed by the witness as well as his prior "business dealings" with the National Council.

The only difference between Presley's original testimony and his amended version, the Commission opines, was not in methodology but "in the final result." Hence, the Commission concludes, Consumer Counsel waived the right to question Presley further on methodology and bias.

We do not agree that Consumer Counsel waived the right to cross-examine Presley beyond the limits imposed by the Commission's order of September 30. One of the key elements of the doctrine of waiver is that the party who is alleged to have waived a right must have had full "knowledge of the facts basic to the exercise of the right." *Employers Ins. Co. v. Great American*, 214 Va. 410, 412-13, 200 S.E.2d 560, 562 (1973).

While Consumer Counsel may have known of the methodology Presley employed and even of his prior business dealings with the National Council, Consumer Counsel could not possibly have known that Presley would later admit he had erred in his computations to the extent of $25 million. Neither could Consumer Counsel possibly have known whether, in the event Presley

---

the "Comments on Corrections to Testimony of Philip O. Presley," filed by Consumer Counsel on September 28, which, while not labeled as a request for an opportunity to cross-examine Presley or to offer rebuttal evidence, could easily have been treated as such a request. In any event, the point became moot when the Commission, *sua sponte*, suspended its order of September 28, 1988, and set the matter down for further proceedings on October 7.

[3] Only the Commission has participated in this appeal on behalf of the appellees. The National Council has not filed an appellate brief or otherwise participated in the appeal.

changed his testimony, his prior business dealings with the National Council may have prompted the change.

The Commission makes light of the explanation Consumer Counsel gave below for declining to cross-examine Presley at the September 14-15 hearing while insisting upon cross-examining him at the October 7 hearing. The explanation, in the words of Consumer Counsel, was that "[w]e deferred cross-examining Mr. Presley during the [earlier] hearing for the sole reason that his recommendation was so close [to Consumer Counsel's recommendation, but now] we find out that there is a radical departure from his original testimony." The Commission says that Consumer Counsel and Presley were not "so close" because, in fact, "there was a difference of $9 to $11 million" between Consumer Counsel's position that a rate decrease of 1.3% was proper and Presley's original position that a 0.7% increase was warranted.

■ Obviously, however, Consumer Counsel took a pragmatic and realistic approach to the situation, deciding that in the face of the National Council's request for a 25.2% rate increase, an increase of only 0.7%, as originally recommended by Presley, would be a signal victory for consumers. In this light, Presley's original testimony was definitely favorable to the position espoused by Consumer Counsel, and the latter's decision to forego cross-examination at that time was tactically correct. An astute cross-examiner knows better than to chance antagonizing a favorable witness.

■ The Commission says further that Presley's amended testimony was not such a "radical departure" from his original testimony as Consumer Counsel claims. While we would not necessarily characterize the departure as "radical," we certainly think it was substantial, and more important, material. The Commission apparently considered Presley's changed testimony persuasive, and the additional $25 million increase recommended by Presley constituted approximately 86% of the total rate increase awarded by the Commission.

■ There can be no doubt that Presley's amended testimony turned the case around. Neither can there be any doubt that the change prejudiced the interests represented by Consumer Counsel. Hence, all the circumstances pre-dating and post-dating the change became relevant, making Presley's testimony at the September 14-15 hearing as well as the October 7 hearing subject to Consumer Counsel's cross-examination.

■ The Commission argues, however, that "[i]t was within the sound discretion of the Commission to deny Consumer Counsel a second opportunity to cross-examine Presley." We disagree. In our opinion, an exercise of discretion which results in a denial of due process constitutes an abuse of discretion.

■ In *VEPCO* v. *State Corp. Comm.*, 226 Va. 541, 312 S.E.2d 25 (1984), we said that "a public utility seeking a rate change is entitled to procedural due process of law." *Id.* at 546, 312 S.E.2d at 28. As noted previously, the Commission concedes that those opposing rate increases are entitled to the same protection. Hence, what we said in *State Highway Comm'r* v. *Cantrell*, 223 Va. 185, 288 S.E.2d 435 (1982), is pertinent here:

> We are mindful that the latitude permissible in cross-examination of witnesses is largely within the sound discretion of the trial court. Yet cross-examination on a matter relevant to the litigation and put in issue by an adversary's witness during a judicial investigation is not a privilege but an absolute right.

*Id.* at 186-87, 288 S.E.2d at 436 (quoting *Basham* v. *Terry, Administratrix*, 199 Va. 817, 824, 102 S.E.2d 285, 290 (1958)).

For the reasons assigned, we will reverse the October 21, 1988 final order of the Commission and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*