## CIRCUIT COURT OF WARREN COUNTY

Warren County
Board of Supervisors

v.

Lionel Sebastian Bearor et al.

March 11, 1993

Case No. (Law) 92–4

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on December 16, 1992. The Plaintiff appeared by its attorney, Douglas W. Napier, Esquire; Robert J. O'Neill, Esquire, appeared for numerous defendants; T. C. Lea, Jr., Esquire, appeared for defendants, Thompson, Dotson, and Smelser; and Kimberly M. Athey, Esquire, appeared for defendant Sydonia Burke, whereupon all exhibits filed by the parties were admitted into evidence, and the findings of fact were reviewed. The Court directed the parties to file memoranda of authorities and took the case under consideration. Following the trial, there were various additional filings by the parties refining the facts, and the parties stipulated that Arthur and Sydonia Burke and Donna Price-Starkell, have not resided within the proposed or actual sanitary district. Upon consideration whereof, the Court has made the following decision.

### I. *Findings of Fact*

The following facts are established in the record and agreed to by the parties:

On January 29, 1988, a Petition for creation of a Sanitary District in South River Estates (Sections I, II, IV, VI, Lots 1, 2, and 3, C, D, and E) and South River Farms (Lots 4, 5, 6, 7, and 8) Subdivisions was signed by Petitioner Polly A. Bearor and Lionel Bearor and filed with this Court. The Petition alleged that the following property owners of South River Estates, Sections I, II, IV, and VI were residents of Warren County:

| Name | Lot No. | Registered to Vote |
| --- | --- | --- |
| Ron Stearns | Lots 2, 9, Sec. I | Not registered |
| Polly Bearor | Lot 10, Sec. I | Registered |
| Lionel Bearor | Lot 10, Sec. I | Registered |
| Arthur Lee Burke | Lot 8, Sec. II | Registered |
| Sydonia Burke | Lot 8, Sec. II | Registered |
| Jack Dunn | Lot 7, Sec. II | Not registered |

Although not listed in the Petition, Donna Price-Starkell, owned Lot 1, Section VI, of South River Estates, and, while she was then a registered voter, she did not live within the proposed sanitary district.

The Petition also alleged that the following property owners of South River Farms, Lots 4, 5, 6, 7, and 8, were residents of Warren County:

| Name | Lot No. | Registered to Vote |
| --- | --- | --- |
| Vernon Smelser | Lot 4 | Not registered |
| Janet M. Smelser | Lot 4 | Not registered |
| Randy Thompson | Lot 8 | Not registered |
| Bonnie Thompson | Lot 8 | Not registered |

Although not listed in the Petition, Arthur and Sydonia Burke were then registered voters who owned Lots 4 and 5 of South River Farms, but they did not reside within the proposed sanitary district. The Smelsers actually owned Lot 6, not Lot 4 as alleged in the Petition.

The Petition erroneously included section IV instead of section III of South River Estates, which latter section then included the following lots:

| Name | Lot No. | Registered to Vote |
| --- | --- | --- |
| Siccama | Lot 1 | Not Registered |
| Kaiser | Lot 2 | Not Registered |
| Myers-Mitchell | Lots 19C, 19D | Not Registered |

Given the allegations in the original Petition, there were two registered voters who resided in the proposed Sanitary District, the two Bearors, who signed the original Petition. Price-Starkell knew of the Petition and was in favor of it. Defendants' Exhibit 17.

By Order of the Circuit Court of Warren County, Virginia, dated February 16, 1989, a Sanitary District was created for South River Estates (Sections I, II, IV, VI, and Lots C, D, and E, which latter three lots were not in a designated section of the subdivision) and South River Farms (Lots 4, 5, 6, 7, and 8) Subdivisions.

The Order of February 16, 1989, was based upon a Petition and Order of Publication, praying that a Sanitary District be created encompassing the property referred to in Paragraph 3 of the Petition, and the Order of Publication intended to list and give notice to all interested parties who resided in or owned real property in South River Estates, Sections I, II, IV, VI, and Lots C, D, and E, and South River Farms, Lots 4, 5, 6, 7, and 8.

Both the original Petition and the original Order of Publication mistakenly named Section IV, South River Estates as property to be encompassed within the Sanitary District. In Section IV, certain lots were then owned by registered voters of Warren County, namely: William Frederick Reiner (Lot A), Mary Vermillion Tyree (Lot C) and Niles Clinton Tyree (Lot C). Since these lots were not intended to be included in the Sanitary District, these registered voters were not listed in the Petition.

On September 19, 1989, an Amended Petition for the Creation of a Sanitary District in a part of South River Estates (Tax Map No. 27E(1) Section I, excluding Lot A; 27E(2) Section 2; 27E(4) Section 3; and 27E(6) Section 6) and in a part of South River Farms (Tax Map No. 27E(7), excluding Lots 1, 2, and 3, and also Tax Map No. 27, Parcels 19C, 19D, and 19E) Subdivisions was filed pursuant to a court order.

The Amended Petition listed as Petitioners, and was signed by, Lionel S. Bearor and Polly A. Bearor. Exhibit 1 of the Amended Petition listed as resident property owners of South River Estates:

| Name | Lot No. | Registered to Vote |
|------|---------|--------------------|
| Ronald M. Stearns | Lots 2, 9, Sec. I | Not registered |
| Polly A. Bearor | Lot 10, Sec. I | Registered |
| Lionel Bearor | Lot 10, Sec. I | Registered |
| Arthur Lee Burke | Lot 8, Sec. 2 | Registered |

| Name | Lot No. | Registered to Vote |
|------|---------|--------------------|
| Sydonia Burke | Lot 8, Sec. 2 | Registered |
| Jack W. Dunn | Lot 7, Sec. 2 | Not registered |
| Charles R. Brown | Lot 1, Sec. 6 | Not registered |

However, as previously noted, the Bearors were the only registered voters who resided within the proposed sanitary district.

The Amended Petition did not list any of the property owners or registered voters in Section 3, South River Estates, which the amended Petition asked to be incorporated in said Sanitary District. There were no registered voters living in Section 3 of South River Estates. No Order of Publication was entered with respect to Section 3, South River Estates; however, all of these property owners knew of the proposed creation of the Sanitary District and are in favor of the Petition creating the Sanitary District.

While the Amended Petition did not list as property owners and registered voters the owners of Lots 19C, 19D, and 19E, South River Estates, none of these owners were registered voters, and all of them knew of the Petition and were in favor of their lots being included within the Sanitary District.

The Circuit Court entered a Corrected Order dated September 19, 1989, whereby a Sanitary District was created for South River Estates (Tax Map No. 27E(1) Section 1 excluding Lot A; 27E(2) Section 2; 27E(4) Section 3; and 27E(6) Section 6) and for South River Farms (Tax Map No. 27E(7), excluding Lots 1, 2, and 3 and also Tax Map No. 27 Parcels 19C, 19D, and 19E) Subdivisions.

Both the Petition and the Amended Petition prayed for the creation of a Sanitary District "to be called 'South River Estates and South River Farms Subdivision Sanitary District' and to have exterior boundaries contiguous with those of South River Estates and South River Farms Subdivisions as shown on those certain plats identified and recorded in the Office of the Clerk of the Warren County Circuit Court." See Defendants' Exhibit 1A, which is a copy of the referenced plat in the Clerk's Office; it does not contain a metes and bounds description of the subdivisions. Neither the Petition, the Amended Petition, any exhibits, any evidence, nor the Order or Corrected Order set forth a metes and bounds description of the Sanitary District.

Said Amended Petition and Corrected Order included Lots 4 and 5, Section 6, South River Estates, as being within said Sanitary District,

but said Lots 4 and 5, Section 6, South River Estates, were not identified in the Order of Publication.

As of the time of the entry of the corrected order, all parties had either actual or legal notice of the proceedings, except for the Burkes as to Lots 4 and 5 of Section 6, South River Estates.

Property owners affected by the creation of the Sanitary District, Arthur Lee Burke, now deceased, and Sydonia Burke have been billed by Warren County, Virginia, with Sanitary District fees, which fees when unpaid, constitute a lien on said property and cause interest and penalties to be incurred, and Arthur Lee Burke and Sydonia Burke appeared before the Board of Supervisors of Warren County, Virginia, challenging the validity of the Sanitary District and demanding exoneration of their property from any Sanitary District fees. The Board of Supervisors therefore directed the filing of this Motion for Declaratory Judgment to resolve this controversy about whether the Sanitary had been validly created.

Lot owners Dotson, Thompson and Smelser have appeared in this proceeding objecting to the creation of the Sanitary District.

## II. *Conclusions of Law*

Virginia Code § 21–113 prescribes the procedure for the creation of a sanitary district:

> The circuit court of any county in this Commonwealth, or the judge of such court in vacation, upon the petition of 50 qualified voters of a proposed district, or if the proposed district contains less than 100 qualified voters upon petition of fifty percent of the qualified voters of the proposed district, may make an order creating a sanitary district or districts in and for the county, which order shall prescribe the metes and bounds of the district.

The Bearors, who were the only registered voters who resided within the proposed sanitary district, signed the petition, so this statutory provision was complied with.

After the petition for the creation of the sanitary district is filed, Virginia Code § 21–114 provides that:

> Upon the filing of the petition the court shall fix a day for a hearing on the question of the proposed sanitary district which hearing shall embrace a consideration of whether the property

embraced in the proposed district will or will not be benefited by the establishment thereof; all interested persons, who reside in or who own real property in (i) a proposed district or (ii) an existing district in cases of enlargement, shall have the right to appear and show cause why the property under consideration should or should not be included in the proposed district or enlargement of same at such hearing; notice of such hearing shall be given by publication once a week for three consecutive weeks in some newspaper of general circulation within the county to be designated by the court or the judge thereof in vacation. At least ten days shall intervene between the completion of the publication and the date set for the hearing, and such publication shall be considered complete on the twenty-first day after the first publication and no such district shall be created until the notice has been given and the hearing had.

The hearing required by this section is a public hearing, *Marsh v. Gainesville-Haymarket San. Dist.*, 214 Va. 83, 84, 197 S.E.2d 329 (1972), and it is not judicial hearing to determine property rights. However, the creation of the sanitary district does usually entail, as it did in this case, the imposition of regulations and taxes which burden the individual properties to be affected. *See County of York v. King's Villa*, 226 Va. 447, 309 S.E.2d 332 (1983). The statute does require that notice by publication be given before the public hearing and that "all interested parties who reside in or own real property in . . . a proposed sanitary district . . . shall have the right to appear . . ." at the public hearing. "Right to a hearing is meaningless without notice." *Schmidt v. City of Richmond*, 206 Va. 211, 219, 142 S.E.2d 573 (1965) (condemnation proceeding). Where due process rights are involved and the statute provides for a public hearing, the parties are entitled to an opportunity to be heard. *See VEPCO v. State Corp. Comm.*, 226 Va. 541, 312 S.E.2d 25 (1984) (rate making proceeding). Since the Burkes had neither actual notice nor notice by publication that their property was to have been included within the sanitary district, the order creating the district as to their property, Lots 4 and 5, Section 6, South River Estates, is void.

The litmus issue in this case is whether the Sanitary District was created in substantial compliance with the statutory procedure. "Substantial compliance means '[c]ompliance with the *essential* require-

ments . . . of a statute'." *Carmel v. City of Hampton*, 241 Va. 457, 461, 403 S.E.2d 335 (1991) (dissent) *quoting Black's Law Dictionary* 1428 (6th ed. 1990). The specific compliance question presented by this case has not apparently arisen before. As noted in *Gough v. Shaner*, 197 Va. 572, 575, 90 S.E.2d 171 (1955), the first step in the analysis is to determine the purpose of the statutes:

> [A] statute or ordinance should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language. Any construction that has the effect of impairing the purpose of the enactment or which frustrates, thwarts or defeats its objects should be avoided. Yet it should not be extended by interpretation or construction beyond the purpose intended by the enacting authorities.
>
> "The purpose for which a statute is enacted is of primary importance in the interpretation thereof. Indeed, a statute is often regarded as speaking as plainly by means of the purpose which underlies it as in any other manner. In any event, in the interpretation of a statute of doubtful meaning, it is proper to take into consideration its purpose or object, or the aim, design, motive, or end in view . . . ." 50 Am. Jur., *Statutes*, § 303, p. 283.
>
> "It is elementary that in searching for the intention of the legislature the court must consider the object of the statute and the purpose to be accomplished." *Rockingham Co-Operative Farm Bureau, Inc. v. City of Harrisonburg*, 171 Va. 339, 344, 198 S.E. 908.
>
> "In searching for the intention of the legislature, it is the duty of the court to consider the object of the statute and the purpose to be accomplished. A statute should have a reasonable construction so as to promote the end for which it was enacted." 17 M.J., *Statutes*, § 38, p. 291.

The object of the sanitary district statutes is to provide a means by which public services may be provided to areas which have developed where no public infrastructure is in place to support the development; therefore, the statutes are remedial in purpose.

As stated in *Board of Sup. v. King Land Co.*, 238 Va. 97, 102–103, 380 S.E.2d 895 (1989), such remedial statutes are to be liberally construed:

> Perhaps the earliest judicial explication of the theory of statutory interpretation known as the "mischief rule," was given in Elizabethan England by the Barons of the Court of Exchequer:
>
> "And it was resolved by them, that for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law,) four things are to be discerned and considered:
>
> "1st. What was the common law before the making of the Act.
>
> "2nd. What was the mischief and defect for which the common law did not provide.
>
> "3rd. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth.
>
> "And, 4th. The true reason of the remedy; and then *the office of all the Judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief*, and *pro privato commodo*, and to add force and life to the cure and remedy, according to the true intent of the makers of the Act, *pro bono publico*."
>
> *Heydon's Case*, 3 Co. Rep. 7a, 7b, 76 Eng. Rep. 637, 638 (1584). Four centuries later, the "mischief rule" retains its vitality. Our own cases have expressly adopted that approach. *N. & W. RR. Co. v. Prindle and Wife*, 82 Va. 122, 130 (1886). Every statute is to be read so as to "promote the ability of the enactment to remedy the mischief at which it is directed." *Natrella v. Board of Zoning Appeals*, 231 Va. 451, 461, 345 S.E.2d 295, 301 (1986) (quoting *Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984)). The ultimate purpose of all rules of construction is to ascertain the intention of the legislature, which, absent constitutional infirmity, must always prevail. All rules are subservient to that intent. *Shackelford v. Shackelford*, 181 Va. 869, 877, 27 S.E.2d 354, 358 (1943). Further, it is a universal rule that statutes such as those under consideration here, which are remedial in nature, are to be

"construed liberally, so as to *suppress the mischief* and advance the remedy," as the legislature intended. *Shumate's Case*, 56 Va. (15 Gratt.) 653, 661 (1860) (emphasis added).

In *Miles v. City of Richmond*, 236 Va. 341, 344, 373 S.E.2d 715 (1988), the Supreme Court construed Virginia Code § 8.01–222, which requires that notice of negligence be given a municipal corporation as a condition precedent to filing an action, and it ruled that: "The language of the statute in question is clear and comprehensive; its provisions are mandatory, not jurisdictional. *Town of Crewe v. Marler*, 228 Va. 109, 112, 319 S.E.2d 748, 749 (1984). The statute is to be construed liberally and substantial compliance with its terms is sufficient. *Id.*, 319 S.E.2d at 749."

In the case at bar, the sanitary district statutes are to be construed liberally, and they have been substantially complied with, so that the Sanitary District was validly created. While neither the Petition, the Amended Petition, any exhibits nor evidence in that cause, nor the Order or Corrected Order, set forth a metes and bounds description of the Sanitary District, as required by Virginia Code Section 21–113, none of the defects either individually or cumulatively rise to the level sufficient to vitiate the earlier creation of the Sanitary District. The order set forth sufficient information to easily and accurately identify the boundaries of the sanitary district, which is the purpose of the statute. *See generally* 25 Am. Jur. 2d, *Drains and Drainage Districts*, § 17.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the South River Estates and South River Farms Subdivision Sanitary District was validly created by the Order of the Circuit Court of Warren County dated September 19, 1989. However, the Sanitary District does not include Lots 4 and 5, Section 6, of South River Estates, formerly owned by Arthur and Sydonia Burke.

This is a final order, and the clerk is directed to send a copy of this order to counsel of record and pro se parties.