# CIRCUIT COURT OF ROCKINGHAM COUNTY

In re the Creation
of a Sanitary District
Within the Lilly Gardens
and Sunset Subdivisions
of Rockingham County etc.

December 20, 1999

Case No. (Chancery) CH99-17474

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on a Petition by approximately 74 of the landowners living in the Lilly Gardens and Sunset Heights Subdivisions of Rockingham County. The petition was brought pursuant to § 21-113 of the Code of Virginia, 1950, as amended, requesting the creation of a sanitary district encompassing the two subdivisions. The statutorily required notice was duly published in the newspaper (§ 21-114) for three consecutive weeks prior to the holding of the first public hearing.

The Lilly Gardens and Sunset Heights Subdivisions are located adjacent to each other in Rockingham County, Virginia. Each subdivision consists of either thirty or thirty-one single family residences. At the first hearing, a substantial portion of the community appeared in support of the petition. Counsel for the petitioners called in excess of ten homeowners who had lived in the subdivision for varying periods of time, but mostly for twenty plus years. As will be described more fully below, it appears that virtually all of the landowners in the affected areas support the creation of a sanitary district for the purposes, *inter alia*, of taking over the water system which supplies those homes.

The petition is opposed by the West Rockingham Water Company, Inc. (hereinafter West Rockingham), which is the private water company which

has supplied service to the two subdivisions since approximately 1976. The County has entered an appearance, but has not taken a position on the petition other than urging the Court to adopt what would be the most cost effective manner of assuring the citizens involved of an adequate and clean supply of water.

At the first hearing, counsel for the Petitioners called over ten residents of the Lilly Gardens and Sunset Heights Subdivisions, most of whom had lived in the area for twenty to thirty years. Their testimony was fairly uniform in that they conceded since 1976 there have been brief periods of time in which they have had an adequate supply of clean water. However, all of them testified that for the most part the supply of water since 1976 in the two subdivisions has been subpar in terms of quality, quantity, and pressure. Many of the homeowners testified that they have had to install their own private filtration systems because the water is so turbid and that these filtration systems require the replacement of the filter cartridges on a weekly or a monthly basis. Many of the residents testified that they refuse to drink the water for sanitary purposes and had taken to purchasing their drinking water in bottled form at local grocery stores. Although there were numerous "horror" stories, the principal gist of them was that at many times the water was dark and brownish because of the high amount of sediment contained in it and that the supply of water was so low that it would sometimes take up to two hours to fill a tea kettle with enough water to make a few cups of tea or coffee. At the end of the ore tenus hearing on October 12, 1999, a proffer was made that there were a number of residents of the subdivisions in Court who would testify similarly to the evidence given by their fellow residents, but opted not to do so in order to reduce the length of the hearing.

It is safe to say that in the two hearings that have been held, there has not been a single resident of the subdivisions who has come forward and opposed the creation of the sanitary district or in any way indicated that they were satisfied with the quality of service that has been provided by West Rockingham.

West Rockingham's position is that they readily admit that the water system now in the subdivisions is subpar and inadequate and needs dramatic capital improvements in order to meet minimally accepted standards. West Rockingham pointed to the fact that in February of 1999, the State Corporation Commission had filed a motion requesting the issuance of a Show Cause Order charging why West Rockingham should not be found in violation of § 56.2-265.13:4 of the Code of Virginia because of their violation of state and federal environmental water regulations and the inadequate provision of service to their customers.

On September 23, 1999, the State Corporation Commission issued a Final Order in the case finding that West Rockingham had failed to meet its obligations under § 56.2-265.13:4 of the Code of Virginia by failing to provide adequate services and facilities for the provision of water to the Petitioners. The State Corporation Commission also found that West Rockingham had failed to comply with the National Primary Drinking Water Regulations and the Commonwealth's Water Works Regulations.

In the ultimate provisions of its Order, the State Corporation Commission ordered that West Rockingham should provide facilities to comply with the statutory requirements and that they were to file a detailed plan on the improvements planned by them to provide these services. The State Corporation Commission also required West Rockingham to file sixty-day progress reports with the State Corporation Commission showing the progress being made on the implementation of the plan.

West Rockingham concedes that the main water pipes in its system in the Lilly Gardens Subdivision are so deteriorated that they need to be replaced in their entirety and that the pipes in the Sunset Heights Subdivision need substantial repairs to be rendered usable and reliable. In addition, West Rockingham concedes that a new filtration system needs to be installed and other plant upgrades need to take place in order to bring their system into minimal compliance with the health regulations.

To that end, on May 4, 1999, West Rockingham had filed with the Virginia Department of Health — OWP a preliminary plan showing required capital expenditures of approximately $300,000.00. Although there was some difference of opinion as to the rate impact upon the citizens of the subdivisions, it appears to be conceded that at a minimum the rate increase that would be required to fund the types of improvements required in the water system would require domestic water rates in the subdivisions to be raised approximately to three or four times the level of the average water bill in this part of Virginia. West Rockingham has filed an application for a rate increase which they concede will cause their current rates charged to the customers in the subdivisions to increase by approximately tenfold.

West Rockingham's position is that the State Corporation Commission has taken control of the situation, has found the company in violation, and is working with the company together with the Virginia Department of Health to implement a feasible plan for upgrading the two water systems to meet minimal acceptable standards. West Rockingham further indicates that they have preliminarily arranged low cost financing through a subsidized governmental program, and they expect the bulk of the loan proceeds to be available in the middle of the year 2000.

The petitioners vehemently object to West Rockingham continuing to be permitted to operate the water system. Petitioners' position is that West Rockingham is essentially a shell corporation in that it has no employees and has few assets. It essentially contracts with a group of consulting engineers who operate the company for a fee (which has never been collected) and who subcontract out all construction and maintenance work on the water system. The petitioners' position is that West Rockingham concedes they have never made money since they were created in 1976 and as a practical matter they have been bankrupt for over the last twenty years and they live basically on a hand-to-mouth basis. of course, West Rockingham's defense is they have done this in order to keep the water rates within acceptable levels in the community. Financial reports and income tax returns put into the file corroborate the testimony of the West Rockingham witnesses that they continually operate in a negative cash flow position. In fact, the minority stockholder of the company (the consulting engineering firm which operates West Rockingham) has not collected the fees it has charged the corporation for over twenty years and has back fees due of approximately $130,000.00. The major stockholder, Burner Well Drilling, Inc., also has money owing to it for PVC piping that was sold to the water company in 1976.

It is conceded by all parties that the governing statute relating to the creation of a sanitary district is found in §§ 21-112.22 *et seq.* of the Code of Virginia, 1950, as amended. Interestingly, the Code provides precious little guidance in determining the criteria applicable for the creation of a Sanitary District. Section 21-114 of the Code, which is conceded by all of the parties to contain the only governing law, says that on the petition of the requisite numbers of registered voters, the Court shall conduct a hearing "which hearing shall embrace a consideration of whether the property embraced in the district will or will not be benefited by the establishment" of a Sanitary District. There is no burden of proof allocated between petitioners and opponents by the statute, and there is no other guidance in the statute as to what criteria are applicable in determining whether or not the property will be "benefited."

The principle argument of the petitioners is that they would be benefited by the creation of the sanitary district because:

(1) The current operator has in twenty-three years proven itself utterly incapable of providing an acceptable quality of water service; and

(2) A sanitary district could provide adequate service by achieving economies of scale and not having to provide for a profit to a private owner.

Obviously, trying to determine the precise positive benefits that would come through the establishment of a Sanitation District are difficult and somewhat speculative. However, what is not speculative is the track record of

West Rockingham in providing service to the customers. Their service has been woefully inadequate and although there may have been many justifications and excuses for this inadequate service, it cannot be gainsaid that the Petitioners have not under the auspices of West Rockingham had a normally functioning water system for over twenty years. Therefore, it appears to the Court to be a reasonable and logical conclusion to be derived from the testimony that has been presented in Court that a Sanitary District would give the Petitioners an opportunity to have a new operator take over the system and provide service which would almost by definition have to be superior to that which they are currently receiving.

The Court is persuaded by the fact that the statutory scheme permitting the creation of sanitation districts appears to be one in which the legislature has determined that little is required of citizens who desire that a sanitary district be created. The Code has not put forth any substantial hurdles, and indeed, it does not even allocate an evidentiary burden to those proposing a sanitary district. It simply says that a sanitary district will be created if the requisite number of registered voters request the same and a hearing is held and a determination is made whether the sanitary district will "benefit" the landowners. This Court is persuaded by the holding of Judge Wetsel in *Warren County Board of Supervisors v. Bearor*, 33 Va. Cir. 9 (Warren County, 1993), in which Judge Wetsel so eloquently set forth the fact that the statute permitting the creation of a sanitary district is remedial in nature and as such should be liberally construed.

Accordingly, the Court will grant the Petition for the creation of the Sanitary District set out by the metes and bounds contained in the Petition. The Petitioners' counsel is requested to prepare a draft order and to circulate it to counsel for West Rockingham and Rockingham County for appropriate endorsement. The Clerk is directed to send attested copies of this opinion to R. Creigh Deeds, Esquire, counsel for Petitioners, to Thomas H. Miller, Jr., Esquire, counsel for West Rockingham Water Company, and to George R. Aldhizer, Jr., Esquire, counsel for Rockingham County, Virginia.